<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

**MICHAEL WINTERS**,

            Plaintiff,

v.

**MARK VALLEAU, et al.**,

            Defendants.

Civil Action No. 19-19817 (ZNQ) (JTQ)

**OPINION**

<u>**QURAISHI, District Judge**</u>

      Plaintiff Michael Winters, an inmate at New Jersey State Prison in Trenton, New Jersey, is proceeding *pro se* with a civil rights complaint pursuant to 42 U.S.C. § 1983 and state law. (Compl., ECF No. 1-2.) Before the Court is Defendants Mark Valleau ("Officer Valleau"), the State of New Jersey, the New Jersey Department of Corrections ("NJDOC"), and the New Jersey State Prison's ("NJSP") motion for summary judgment. (Mot., ECF No. 27.) Having considered the parties' submissions in support of and in opposition to the Motion, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons below, the Court will grant the Motion in part, enter summary judgment in Defendants' favor on Plaintiff's federal claims, and decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

**I.    BACKGROUND AND PROCEDURAL HISTORY**

      In December 2012, Plaintiff was arrested and arraigned on murder charges in the New Jersey Superior Court of Camden County. (*See* Compl. ¶ 3.) He was found not guilty of the charges. (*Id.* ¶ 6.)

Nonetheless, Plaintiff also faced unrelated charges of kidnapping and robbery. *See State v. Winters*, No. A-2111-15T2, 2017 WL 3297461, at *1–3 (N.J. Super. Ct. App. Div. Aug. 3, 2017). Plaintiff was ultimately convicted of kidnapping and robbery and sentenced to forty-five years' imprisonment. *Id.*

On May 17, 2017, while incarcerated, Plaintiff filed a lawsuit in this Court alleging that he was falsely arrested and imprisoned on the murder charges and that certain defendants in that matter had defamed him. *See Winters v. New Jersey*, No. 17-3530, 2018 WL 1665929, at *1 (D.N.J. Apr. 6, 2018). While the case was pending, Plaintiff was placed in administrative segregation on February 12, 2018 "under the charge of Defendant Mark Valleau." (Compl. ¶ 7.)

On April 6, 2018, the Court dismissed the complaint for failure to state a claim for relief. (Apr. 6, 2018 Op. & Order, ECF No. 27-10.) Specifically, the Court dismissed Plaintiff's false arrest and imprisonment claims because Plaintiff had failed to plead sufficient facts for the Court to reasonably infer that the arrest was made without probable cause and because the claims were untimely. (*See id.*) Moreover, it dismissed Plaintiff's defamation claim because he had not identified any specific defamatory statements and because the statute of limitations barred this claim as well. (*See id.*) Nonetheless, the Court provided Plaintiff leave to amend within thirty days. (*Id.*)

The next day, Plaintiff was transported to a medical facility for surgery. (*See* Compl. ¶ 11.) Upon return, he was placed in the prison's infirmary. (*Id.* ¶ 12.) According to Plaintiff, he was denied access to all his legal materials while housed in the infirmary. (*Id.* ¶ 13.) As a result, Plaintiff was unable to meet the deadline the Court imposed to submit an amended complaint. (*Id.* ¶ 14.)

Further, "Plaintiff requested that all of his property and legal material left in the possession of Defendant Valleau in the administration segregation unit be returned to him." (*Id.* ¶ 16.) However, Plaintiff contends that "Defendant Valleau retaliated against Plaintiff" for filing the lawsuit "by confiscating and destroying all of his legal research material and evidence to support his claim for false arrest." (*Id.* ¶ 19.)

On August 28, 2019, Plaintiff initiated the instant matter by filing the Complaint in the New Jersey Superior Court, Mercer County. (*See* Compl.) The Court construes the Complaint as asserting First Amendment access-to-courts and retaliation claims under Section 1983 and tort claims under state law for the destruction of his legal material against the State of New Jersey, NJDOC, NJSP, and Officer Valleau in his individual capacity. (*See id.*)

Defendants removed the matter to this Court on November 4, 2019. (*See* Notice of Removal, ECF No. 1.) On November 27, 2019, the Defendants answered the Complaint, and the matter proceeded to discovery. (*See* Answer, ECF No. 3.)

Following the end of discovery on June 30, 2022, the Defendants submitted the instant motion for summary judgment on August 19, 2022. (*See* Mot.) Plaintiff submitted an opposition brief on December 8, 2022. (Opp'n Br., ECF No. 36.) Defendants replied on December 27, 2022. (Reply, ECF No. 40.)

On January 25, 2023, the Court notified the parties that it may consider and resolve factual disputes regarding the issue of exhaustion in deciding Defendants' motion for summary judgment and provided the parties time to submit any additional evidence for the Court's consideration. (January 25, 2023 Order, ECF No. 41.) When the parties did not respond, the Court provided a second notification on July 31, 2023. (July 31, 2023 Order, ECF No. 42.) On August 3, 2023, Defendants indicated that they will not be submitting additional evidence in support of their

3

exhaustion argument.  (Defs.' Aug. 3, 2023 Letter, ECF No. 43.)  Plaintiff has not responded.  Accordingly, the matter is ripe for determination.

## II. LEGAL STANDARD

A court should grant summary judgment if the evidence in the record, viewed with all reasonable inferences in favor of the nonmoving party, demonstrates that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986); *Todaro v. Bowman*, 872 F.2d 43, 46 (3d Cir. 1989).  An issue is "genuine" only if a reasonable jury could possibly find in the non-movant's favor on that issue.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).  A fact is "material" only if it influences the outcome under the applicable law.  *Id.* at 248.

The moving party bears the initial burden of informing the district court of the basis for its motion and demonstrating either (1) that there is no genuine issue of fact and that as a matter of law, the moving party must prevail, or (2) that the nonmoving party has not shown facts relating to an essential element of the issue for which he bears the burden.  *Celotex Corp.*, 477 U.S. at 323, 331.  Once either showing is made, the burden shifts to the nonmoving party, who must demonstrate facts which support each element for which he bears the burden and establish the existence of genuine issues of material fact.  *Id.*  To satisfy this burden, the non-moving party "may not rest upon the mere allegations or denials of his pleading," Fed. R. Civ. P. 56(e), and he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).  The non-moving party must go beyond the pleadings and point to specific factual evidence showing there is a genuine material issue for trial.  *Celotex Corp.*, 477 U.S. at 323–24.  This is a rigorous burden for

the non-movant: he must "point to concrete evidence in the record that supports each and every essential element of his case." *Orsatti v. N.J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995). Speculation and conjecture will not suffice. *See Jackson v. Danberg*, 594 F.3d 210, 227 (3d. Cir. 2010).

### III.  DISCUSSION

In their Motion, Defendants make eleven arguments that they are entitled to summary judgment and/or dismissal of Plaintiff's claims. (Br. in Supp. i–iii, ECF No. 27-1.) The Court first addresses Defendants' argument that the State of New Jersey, NJSP and NJDOC are improper defendants under Section 1983. Next, the Court addresses Defendants' argument that Plaintiff's access-to-courts claims must fail because Plaintiff's underlying lawsuit is not of the type that qualifies for constitutional protection and because Plaintiff did not suffer an actual injury. Third, the Court considers Defendants' argument that Plaintiff's retaliation claims must fail because Plaintiff fails to proffer evidence of an adverse action or causal connection. As the Court agrees that these arguments warrant the entry of summary judgment in favor of Defendants on Plaintiff's federal claims, the Court does not reach Defendants' other arguments. Finally, as explained below, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and will remand them to state court.

#### A.  Whether the State of New Jersey, NJSP, and NJDOC Are Proper Defendants Under Section 1983

As an initial matter, Defendants contend that the State of New Jersey, NJSP and NJDOC are not proper defendants under Section 1983.[1] (*See id.* at 11–12.) Section 1983 imposes liability

---

[1] Although Defendants also argue that Officer Valleau acting in his official capacity is not a proper defendant under Section 1983, the Court does not construe the Complaint as asserting claims against him in his official capacity. To the extent that Plaintiff intended to assert Section 1983 claims against Officer Valleau in his official capacity, the Court would dismiss such claims with prejudice for the reasons immediately below. *See infra* Part III.A.

on "[e]very *person* who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by the Constitution and laws." 42 U.S.C. § 1983 (emphasis added). To be liable under Section 1983, therefore, a defendant must be a "person" within the meaning of the statute. *See id.*

Moreover, the Supreme Court has held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, a cause of action under Section 1983 "cannot be asserted against the state, its agencies, or its officials acting in their official capacities." *Landi v. Borough of Seaside Park*, No. 07-5319, 2009 WL 606141, at *6 (D.N.J. Mar. 9, 2009).

Here, as the State of New Jersey, NJSP, and NJDOC undisputedly constitute a state or its agencies, none of them constitutes a "person" within the meaning of Section 1983. *See Will*, 491 U.S. at 71; *Landi*, 2009 WL 606141, at *6. Accordingly, the Court enters summary judgment in favor of these defendants as to Plaintiff's Section 1983 claims.

### B. Whether Officer Valleau Is Entitled to Summary Judgment on Plaintiff's Access-to-Courts Claim

Next, the Court considers Plaintiff's access-to-courts claim against Officer Valleau. Defendants argue that Officer Valleau is entitled to summary judgment because Plaintiff's underlying claims in his 2017 lawsuit are not the type that amount to a denial of access to the courts. (*See Br. in Supp.* 14–15.) In addition, Defendants argue that Plaintiff has not shown that he suffered any actual injury. (*See id.* at 15–18.)

"[P]risoners have a constitutional right of access to the courts." *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right entails not only a right for prisoners to litigate claims without state

6

interference but also certain affirmative obligations on states to provide "meaningful access" to the courts. *See id.*

The right, however, "does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. *Lewis v. Casey*, 518 U.S. 343, 355 (1996). The right applies only to direct or collateral attacks on a prisoner's conviction or sentence or civil rights suits challenging the conditions of his confinement. *See id.*

An inmate alleging an access-to-courts claim must show an actual injury and causation. *Id.* "To do this, he must identify an 'arguable,' 'nonfrivolous' underlying cause of action, either anticipated or lost, and show that the [defendant's] deficient program [or interference] frustrated his efforts to litigate that action." *Duran v. Merline*, 923 F. Supp. 2d 702, 723 (D.N.J. 2013).

The Court agrees with Defendants that Plaintiff's false arrest, false imprisonment, and defamation claims in his 2017 lawsuit stemming from murder charges for which he was ultimately found not guilty do not constitute a direct or collateral attack on his unrelated convictions and sentence for kidnapping and robbery. Nor do they amount to a challenge of the conditions of his confinement. *See Rodriguez v. New Jersey*, No. 14-3729, 2014 WL 2812202, at * (D.N.J. June 23, 2014) (A false imprisonment [or false arrest] claim is a Fourth Amendment challenge having *nothing in common* with one's conditions of confinement.") (emphasis in original). Accordingly, the 2017 lawsuit does not give rise to a proper access-to-courts claim. *Lewis*, 518 U.S. at 355.

Even if it did, the Court also agrees with Defendants that Plaintiff has not shown sufficient evidence that he suffered an actual injury. The Court dismissed Plaintiff's claims in his 2017 lawsuit, among other reasons, because the relevant statute of limitations barred them, (*see* Apr. 6, 2018 Op. 7–10), and Plaintiff fails to offer any evidence of a reason that would have justified

7

equitable tolling or otherwise saved his claims. Accordingly, the Court enters summary judgment in Defendants' favor on Plaintiff's access-to-courts claim against Officer Valleau.

### C. Whether Officer Valleau Is Entitled to Summary Judgment on Plaintiff's Retaliation Claim

The Court now turns to Defendants' argument that Officer Valleau is entitled to summary judgment on Plaintiff's retaliation claim. (Br. in Supp. 18–21.) In particular, Defendants argue that Plaintiff has failed to proffer evidence of an adverse action or causal connection. (*Id.*)

Some government actions, not necessarily unconstitutional in and of themselves, may amount to a constitutional violation if motivated in substantial part by a desire to retaliate for the exercise of a constitutional right. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). To sustain a claim for retaliation, a prisoner must demonstrate that: (1) he was engaged in constitutionally protected conduct; (2) "he suffered some 'adverse action' at the hands of prison officials"; and (3) "his constitutionally protected conduct was a 'substantial or motivating factor' in the decision" to take that action. *See Wisniewski v. Fisher*, 857 F.3d 152, 156 (3d Cir. 2017).

An action is considered "adverse" if it would be "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). The effect of the action "need not be great in order to be actionable"; rather it need only be "more than *de minimus.*" *Watson v. Rozum*, 834 F.3d 417, 423 (3d Cir. 2016). Whether an action is adverse "is an objective inquiry and ultimately a question of fact." *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012).

Moreover, "[b]ecause motivation is almost never subject to proof by direct evidence, [a prisoner] must rely on circumstantial evidence to prove a retaliatory motive," and can satisfy his burden "with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with

timing that suggests a causal link." *Id.* at 422. "[W]here the temporal proximity is not so close as to be 'unduly suggestive,'" the appropriate test is "timing plus other evidence." *Id.* at 424. And that other evidence can be "gleaned from the record as a whole." *Id.*

Nonetheless, "[i]t is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002). And temporal proximity cannot be used to show that a decisionmaker was aware of the protected conduct in the first place. *See id.* at 494.

Here, the Court agrees with Defendants to the extent they argue that Plaintiff has failed to proffer sufficient evidence regarding the causation prong of his retaliation claim. In particular, the record contains insufficient evidence that Officer Valleau was aware of the underlying lawsuit. In fact, the only evidence that could arguably have any probative value regarding Officer Valleau's awareness is a double hearsay statement from Plaintiff's deposition. (*See* Winters Dep. 70:7–18, ECF No. 27-11.) At his deposition, Plaintiff testified that an unidentified individual told him that Officer Valleau said "the guy that's on your tier, Winters, is causing me problems[,] and that's why I brought all that paperwork down." (*Id.*) As the Court does not discern any applicable exception to the rule against hearsay to defeat both levels of hearsay, and, as Plaintiff has failed to identify the declarant, the statement is not capable of being admissible at trial and may not be used to defeat summary judgment. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 961 n.1 (3d Cir. 1996); *see also Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 239 (3d Cir. 2016) (distinguishing between identified and unidentified hearsay declarants in determining whether a statement is capable of being admissible at trial and can be considered on a motion for summary judgment).

In any event, even if the statement were capable of being admissible at trial, there is nothing in the record to suggest that the "problems" to which Officer Valleau allegedly referred related to the underlying lawsuit or any other constitutionally protected conduct. Without more, a reasonable jury could not find that Officer Valleau knew of the underlying lawsuit. Accordingly, Plaintiff fails to offer sufficient evidence to demonstrate a causal connection, *see Ambrose*, 303 F.3d at 493, and the Court will enter summary judgment in Defendants' favor on Plaintiff's retaliation claim against Officer Valleau.

### D. Plaintiff's Remaining State Law Claims

Finally, the Court addresses Plaintiff's remaining state law claims. The potential basis for the Court's jurisdiction over Plaintiff's state law claims is supplemental jurisdiction pursuant to 28 U.S.C. § 1367. "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 387 (1998). However, "where the claim[s] over which the district court has original jurisdiction [are] dismissed before trial, the district court *must* decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Mattis v. Pa. Dep't of Corr.*, No. 19-3672, 2022 WL 610793 (3d Cir. Mar. 2, 2022) (quoting *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)).

Here, the Court has dismissed all of Plaintiff's claims for which it has original jurisdiction, *i.e.*, Plaintiff's federal claims under Section 1983. Pursuant to 28 U.S.C. § 1367(c)(3), the Court

declines to exercise supplemental jurisdiction over Plaintiff's state law claims and will remand those claims to state court.[2]

IV.   <u>**CONCLUSION**</u>

For the reasons above, the Court will grant Defendants' Motion in part, enter summary judgment in Defendants' favor as to Plaintiff's federal claims, and decline to exercise supplemental jurisdiction over Plaintiff's state law claims.  An appropriate order follows.

Date: June 25, 2024

                                          s/ Zahid N. Quraishi
                                          **ZAHID N. QURAISHI**
                                          **UNITED STATES DISTRICT JUDGE**

---

[2] Where a case has been removed from state court and a district court declines supplemental jurisdiction after dismissing all the plaintiff's federal claims, the correct procedure is to remand the state claims for consideration by the state court. *See Borough of W. Mifflin*, 45 F.3d at 788.